IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN COURT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **Osama Abu Irshaid**, et al.; | |
| *Plaintiffs,* | Case No.: 1:24-cv-1405 (MSN/WBP) |
| v. | District Judge Michael S Nachmanoff |
| **Pam Bondi**, United States Attorney General, et al.; | |
| *Defendants.* | |

**PLAINTIFF'S MOTION TO COMPEL**

## INTRODUCTION

Given the narrow issues remaining in the case, Plaintiff issued only two interrogatories and five requests for the production of documents. Each of these discovery requests relates to the core elements of Plaintiff's Fourth Amendment claim, but Defendants failed to meaningfully respond to *any* of the requests. Instead, Defendants offer a series of boilerplate objections and two Government reports, claiming that, together, this is enough. Defendants attempt to skirt both the federal rules and fundamental concepts of fairness by attempting to force Plaintiff to litigate without any of the evidence he is entitled to. This Court must compel Defendants to respond to Plaintiff's requests.

## STATEMENT OF FACTS

Plaintiff issued a total of seven discovery requests to Defendants, including two interrogatories and five requests for the production of documents. Exhibit A – Defendants' Responses to Interrogatories; Exhibit B – Defendants' Responses to Requests for Production of Documents. Defendants objected to each on almost identical grounds and did not fully respond to any of the requests.

For every discovery request, Defendants object on the grounds that each is "overbroad and unduly burdensome, and therefore not proportional to the needs of the case and not within the scope of discovery under Fed. R. Civ. P. 26(b)(1)." *See generally* Ex. A; Ex. B. For every discovery request, Defendants object on the grounds that each is subject to the law enforcement and investigatory files privilege, and to the extent it seeks information that is Sensitive Security Information." *Id.*

<u>Interrogatories</u>

2

Plaintiff's first interrogatory request asks Defendants to describe the information Defendants searched when they had possession of Dr. Abu Irshaid's phones. Ex. A at 5. Defendants offer no response to this interrogatory, instead stating "Defendants stand on the foregoing objections." *Id.* at 7. Plaintiff's second interrogatory request asks Defendants to identify every instance where the government seized or searched Abu Irshaid's devices, as well as the individuals and agencies involved with those seizures and searches. *Id.*

In response, Defendants offer a series of redundant TECS reports that identify only two instances, June 3, 2024 and August 9, 2024, where Defendants seized and searched Dr. Abu Irshaid's phone. Ex. C – CBP 1-59. The TECS reports do not identify any individuals involved in the searches or seizures, do not identify the agency that decided to conduct the search, and provide heavily redacted, piecemeal information about why two searches were conducted. *Id.*

For the August 9, 2024 device search, the TECS reports state "[d]ue to ABU IRSHAIDs [REDACTED] his travel to a country of interest, to enforce U.S. Custom laws, and for national security concern, [REDACTED] media exam and [REDACTED] media search were requested and approved by SCPBO [REDACTED] and Watch Commander [REDACTED]." *Id.* For the June 3, 2024 device search, the TECS reports state "[d]ue to the subjects [REDACTED] his own admission of sanitizing his device, and information related to an ongoing Congressional inquiry, Redacted exam was requested and approved by WC [REDACTED]. [REDACTED]." *Id.*

<u>Requests for the Production of Documents</u>

Plaintiff's five document requests seek only information related to the device seizures and searches. The requests ask for: documents and communications related to the searches and seizures; chains of custody related to the government's possession of the devices; the information the government extracted from the devices; documents showing why the officers seized the devices; and documents related to the government's extended seizure of Dr. Abu Irshaid's device starting in June 2024. *See* Ex. B. In response to these document requests, the government either refused to answer, or pointed to the same TECS reports described above. *Id.*

## ARGUMENT

### I. Each of Plaintiff's Discovery Requests are Relevant and Narrowly Tailored to Seek Information Relevant to the Remaining Issues in the Case.

For each of Plaintiffs' discovery requests, Defendants offer the same boilerplate objection: that the requests are "overbroad and unduly burdensome, and therefore not proportional to the needs of the case and not within the scope of discovery under Fed. R. Civ. P. 26(b)(1) . . . ." Ex. A; Ex. B. But Rule 26(b)(1) states that the scope of discovery is vast, including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). During discovery, relevance is "broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (quoting *Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Plaintiff's discovery requests—aimed directly at why and how Defendants searched Plaintiff's phone—comfortably meet this lax standard.

### A. The Discovery Requests Bear on the Merits of Plaintiff's Fourth Amendment Claims.

Interrogatory #1 and Requests for the Production of Documents # 1, 2, 3, 4, and 5 seek information necessary to establish Plaintiff's Fourth Amendment claims. Dr. Abu Irshaid alleges that Defendants violated the Fourth Amendment through their repeated searches of his phones. *See* Am. Compl., Dkt. 19, *Count I*. The Fourth Amendment analysis starts with the nature of the search. Only "forensic" searches, as opposed to "manual" searches, require individualized reasonable suspicion. *See United States v. Kolsuz*, 890 F.3d 133, 137 (4th Cir. 2018); *United States v. Aigbekaen*, 943 F.3d 713, 726 (4th Cir. 2019) (Robinson J., Concurring). Forensic searches involve connecting an external device to "review, copy, or analyze" a phone's content. *Kolsuz*, 890 F.3d at 146, n. 6.

ROG #1 and RFPs #1 and 3 request information that would establish the type of search conducted. ROG # 1 asks for "the information the government has searched for when it previously searched or seized Plaintiff's electronic devices." Ex. A. RFP #1 asks for "[a]ll documents and communications related to the searching and seizing of plaintiff's electronic devices." Ex. B. RFP # 3 asks for "[a]ny and all data extracted or downloaded from Plaintiff's devices while in the government's custody." *Id.* These three requests seek information related to the types of searches conducted and the type of information the government took from Dr. Abu Irshaid's phones—information relevant to establishing that a forensic search has taken place. *See Kolsuz*, 890 F.3d at 146, n. 6. When Abu Irshaid made claims about forensic searches in his Amended Complaint, the Government responded by stating it was a "bald claim." *See* Dkt. 21 at 16. Now, given the opportunity to prove that no forensic search has taken place, the Government declines to provide that information, instead suggesting that it's beyond the scope of the issue and subject to a bevy of privileges.

5

Here, Plaintiff does not have enough evidence to win his device search claim. Dr. Abu Irshaid only knows that his phone is seized and searched every time he returned from an international flight from 2010-2017 and since 2024, and that Defendants sometimes choose to hold his phone for extended periods of time without explanation. Dkt. 19, Am. Compl. at ¶¶ 268, 270, 296-300, 316-319. He does not know the extent of the searches conducted—only Defendants know. This tilts the proportionality consideration of Rule 26(b)(1) in favor of permitting the discovery requests because one consideration is "the parties' relative access to relevant information." *See Stone v. Trump*, 453 F.Supp.3d 758, 766 (D. Md. 2020) (citing Fed. R. Civ. Pro. 26(b)(1)).

<u>ROG # 2 and RFPs # 2, 4, and 5 request information establishing that the government did not have reasonable suspicion.</u> This Court has already held that inclusion on the TSDB alone is not sufficient to satisfy the reasonable suspicion standard. *See* MEMORANDUM OPINION AND ORDER, Dkt. 30 at 19-20. Instead, "reasonable suspicion must be based on the facts, and their rational inferences, known to [the searching officer]" and the officers must have "knowledge of specific and articulable facts to justify the intrusion." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 21 (1968)) (internal quotations omitted).

Each of these requests seeks information that would establish the reason the government and its officers conducted forensic searches of Dr. Abu Irshaid's devices. They would prove, in Plaintiff's view, that the officers who have searched Dr. Abu Irshaid's phone over the years have not had the requisite reasonable suspicion to conduct the searches. ROG # 2 asks for Defendants to identify each instance where the Government searched Dr. Abu Irshaid's phones and for the government to provide information related to the searches, including the day, length of time, and officers involved. Ex. A. ROG #2 would allow Plaintiff

to know every instance a phone was searched and identify the officers Defendants assert possessed reasonable suspicion when they searched Plaintiff's devices. This puts Plaintiff in the best position to establish the basis of the searching officer's suspicion and to challenge its adequacy under the Fourth Amendment.

RFP # 2 pursues a similar kind of evidence for the exact same purpose, seeking reports or chains of custody documents regarding the searches of Dr. Abu Irshaid's phones. Ex. B. RFP # 2 would allow Plaintiff to ensure they have a record of every officer who may have searched his phones.

RFP #4 and #5 are also aimed at core facts, seeking documents that reflect the reasons why Defendants searched at the border repeatedly, from 2010 to the present, and decided to seize his phone for months in 2024. *Id.* During this extended seizure, the Government may have used extraordinary measures to scrape information from Dr. Abu Irshaid's phone, a fact that would place much greater demands on the Government's justification for the search.

In response to these discovery requests, Defendants provided a few documents—TECS Reports—that regard two instances where Dr. Abu Irshaid's phone was searched. Ex. C. The responses contain no officer names, no chains of custody, no other documents, and they redact key parts of the written explanation about why Defendants' agents searched Plaintiff's phone. *Id.*

These responses are insufficient for two reasons. First, Defendants provide TECS reports for only two border encounters that regard Plaintiff's device, rather than every encounter. *See* Exhibit B. Plaintiff believes that, by establishing a recurring practice, he will demonstrate a consistent practice of searching his phone without reasonable suspicion that

this Court can enjoin.[1] Second, the responses that are provided are heavily redacted to the point of being incomprehensible. Take, for example, the government's document regarding the August 8, 2024 search of Dr. Abu Irshaid's phone. The document Defendants provide states: "Due to ABU IRSHAIDs [REDACTED] his travel to a country of interest, to enforce U.S. Custom laws, and for national security concern, [REDACTED] media exam and [REDACTED] media search were requested and approved by SCBPO [REDACTED] and Watch commander [REDACTED]." Ex. C. The redacted information also contains Defendants' stated reasons for the searches, also relevant to reasonable suspicion. The redacted information also contains officer names, and officer names would help Plaintiff's ascertain the reason for the searches for the purpose of establishing a lack of reasonable suspicion.

Defendants seek to withhold relevant discovery using generic, boilerplate objections and, instead, provide responses that are carefully curated to bolster their defenses. "Discovery requests 'should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request.'" *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014) (quoting Fed. R. Civ. P. 37, Advisory Committee's Notes (1993 Amendments)). Indeed, the purpose of discovery is to "expose the facts and illuminate the issues." *Id.* Defendants attempt to make Plaintiff litigate in the dark.

### B. The Discovery Requests Bear on Plaintiff's Standing to Seek Injunctive Relief.

---

[1] As described below at ____, Plaintiff must demonstrate a consistent practice of unconstitutional searches to have standing to seek injunctive relief against future searches.

Defendants misunderstand Plaintiff's claim to be a narrow challenge to two searches in 2024. *See* Def. Brief (the "the sole remaining claim [is] Plaintiff's Fourth Amendment challenge to the alleged June 3, 2024 and August 8, 2024 searches of Plaintiff's devices by CBP agents at Dulles Airport."). But Plaintiff seeks injunctive relief to stop the recurrence of the illegal searches that gave raise to this action and does not seek damages about the 2024 searches.

In its Motion to Dismiss decision, this Court permitted Count I, "as to Plaintiff Abu Irshaid's as-applied challenge" to CBP's border search policy to proceed in its entirety. Dkt 30 at 33. After a motion for reconsideration, the Court further narrowed the claim to the search (and not the seizure) of Plaintiff's devices. Dkt. 45 at 3. But the Court did not, as the Defendants suggest, limit Plaintiff's claim to the 2024 searches. *Id.* Indeed, Count I challenges the "illegal search…of Plaintiff Osama Abu Irshaid's Electronic Devices." Am. Compl., Dkt. 19 at p. 76. This recurring search dates back more than a decade, having been searched repeatedly "[f]rom 2010 to 2017." Dkt. 19 at ¶ 271. It is all of these device seizures that underly Plaintiff's request for relief that "[e]njoins Defendants from searching electronic devices at the border absent a warrant supported by probable cause." *Id.* at ¶ 577. Thus, all of these searches are proper targets of discovery.

For a claim for injunctive relief, a plaintiff "must establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d, 280, 287 (4th Cir. 2018) (citing *O'Shea v. Litleton*, 414 U.S. 488, 495-96 (1974)). When a plaintiff "aver[s] a historic pattern" of injury, "the Court may plausibly infer that such infringements will continue in the future." *El Ali v. Barr*, 473 F.Supp.3d 479, 519 (D. Md. 2020). So, to secure injunctive relief, Dr. Abu Irshaid must demonstrate a "historic pattern" of unconstitutional border searches. Defendants' arbitrary,

9

temporal limitations do nothing more than artificially limit the history of illegal cell phone searches Dr. Abu Irshaid can prove.

## II. Plaintiff has Overcome any Law Enforcement Privilege.

"[T]he law enforcement privilege protects "information that would endanger witnesses and law enforcement personnel or the privacy of individuals involved in an investigation and information that would otherwise interfere with an investigation." *United States v. Marsh*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (cleaned up) (quoting *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)). "Courts agree that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies." *Id.*

"The law enforcement privilege is qualified." *Hugler v. Bat Masonry Co.*, 15-cv-28, 2017 WL 1207847 (W.D. Va. Mar. 31, 2017). The court must balance "[t]he public interest in nondisclosure ... against the need of a particular litigant for access to the privileged information." *Id*. (quoting *In re City of New York*, 607 F.3d at 944).

Once the Government has shown the privilege exists, the burden shifts to the Plaintiffs to show that the privilege is overcome. A party seeking disclosure under the privilege must show "(1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) a compelling need for the information." *In re The City of New York*, 607 F.3d at 945.

Once invoked, Courts are not to defer blindly to the Government's assertion. Instead, courts "take very seriously our obligation to review the government's claims with a very careful, indeed a skeptical, eye, and not to accept at face value the government's claim or justification of privilege." *Abilt*, 848 F.3d at 312 (cleaned up) (quoting *Al–Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007)).

Here, assuming Defendants have validly invoked the law enforcement privilege in the first place, Plaintiffs have met their burden under *In re New York*. First, Dr. Abu Irshaid's Fourth Amendment claim is not frivolous. It is based on established Fourth Amendment precedent and has survived a motion to dismiss. Second, the information Dr. Abu-Irshaid seeks is not available by other means. Only Defendants can identify: every instance where Dr. Abu Irshaid's phone has been searched; the nature of each search; who has handled Dr. Abu Irshaid's devices; the officers involved in the searches; and the suspicion Defendants relied upon when conducting their searches. Third, Dr. Abu Irshaid has a compelling need for the information. As explained at length above, each of the discovery requests is narrowly tailored to seek information necessary to the merits of Dr. Abu Irshaid's Fourth Amendment claim or necessary to establish that Dr. Abu Irshaid has standing to seek injunctive relief. Plaintiffs have met their burden of overcoming law enforcement privilege.

### III. SSI Information Should be Produced to Plaintiff's Counsel with SSI Clearance.

To the extent the SSI privilege applies to any of the withheld discovery, Plaintiffs' attorneys are still entitled to the discovery. "Congress has provided a mechanism for parties … to obtain access to this protected information, subject to a showing of substantial need, a criminal history and terrorist background check, and a court-issued protective order." *Khairullah v. McHenry*, 2025 WL 401194 at *1 (D. Mass. Jan. 31, 2025) (citing Section 525(d) of the Dept. of Homeland Security Appropriations Act of 2007, Pub.L. No. 109-295, 120 Stat. 135, 1382 (Oct. 4, 2006)). The SSI designation is "not a bar to production" but instead "evokes certain prerequisites to production that must be followed to protect the sensitive nature of the information." *Thomas v. GATX Corp.*, 2020 WL 5633426 at *2 (citing *Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1183 (11th Cir. 2004).

Here, Dr. Abu Irshaid has demonstrated a substantial need by showing that the withheld discovery responses are crucial to his Fourth Amendment claims. Additionally, Plaintiff's attorneys are prepared to submit to a background check and some, indeed, have already been cleared to see SSI designated information in a similar case challenging Defendants' watchlisting enterprise. As such, Defendants must provide SSI information to Plaintiff's counsel.

## CONCLUSION

The Court should grant Plaintiff's Motion to Compel and order Defendants to provide adequate responses to Plaintiff's discovery requests.

Dated: October 3, 2025                                             Respectfully Submitted,


CAIR LEGAL DEFENSE FUND

BY: /s/ Lena F. Masri
Lena F. Masri
lmasri@cair.com
Gadeir I. Abbas
gabbas@cair.com
Catherine Keck
ckeck@cair.com

453 New Jersey Ave., S.E.
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

*Attorneys for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I certify that on September 30, 2025, Plaintiff's counsel conferred in good faith with Defendants' counsel regarding the discovery requests and did not reach a resolution on the discovery disputes.

/s/ Gadeir Abbas
Gadeir Abbas

13