IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| OSAMA ABU IRSHAID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24cv1405 (MSN/WBP) |
| | ) |
| PAMELA BONDI, United States Attorney General, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER**

Plaintiff Osama Abu Irshaid's arguments in his Opposition to Defendants' Motion for a Protective Order demonstrate a fundamental disconnect between the deposition topics Plaintiff has noticed and the single claim remaining in this case: Plaintiff's as-applied challenge under the Fourth Amendment to two alleged forensic searches of his electronic devices after returning from travel abroad at Washington Dulles International Airport (Dulles) on June 3, 2024 and August 8, 2024. *See* Dkt. 30 at 15–20 (dismissing Fourth Amendment claim except for as-applied challenge to 2024 searches and seizure); Dkt. 45 (granting reconsideration and dismissing Fourth Amendment claim as to alleged seizure). Plaintiff argues he is entitled to take three depositions, pursuant to Fed. R. Civ. P. 30(b)(6), of three different federal agencies "regarding searches and seizures of Plaintiff's electronic devices" going back *fifteen years* to 2010, as well as testimony regarding "other treatment commonly associated with watchlist placement, such as secondary screening," "comparator evidence of non-forensic searches for the duration of his watchlist status," and the information held by agencies that are "leaders of the watchlisting enterprise . . . collected

1

during law enforcement encounters." Dkt. 78 at 5-6, 9. In a case that concerns the narrow question of whether reasonable suspicion supported two discrete searches conducted by CBP in June and August 2024, Plaintiff should *not* be permitted to conduct broad sweeping discovery into the TSDS going back a decade and a half.

Accordingly, Defendants now seek a protective order to (1) limit Topics 1 through 5 for CBP to information relevant to the sole remaining issue in this case—whether CBP's June 3 and August 8, 2024 searches passed muster under the Fourth Amendment;[1] (2) preclude Plaintiff from seeking testimony of privilege material; and (3) preclude depositions of the FBI and TSC, which did not make the decision to search Plaintiff's phone or conduct the searches at issue.

## ARGUMENT

I. **As to CBP, the Court Should Limit Topics 1 through 5 Because They Are Overly Broad, Unduly Burdensome, Irrelevant, and Disproportionate to the Needs of the Case, and Because They Address a Merits Issue the Court Already Resolved in Defendants' Favor.**

As to CBP, Topics 1 through 5 relate to all border "screenings," searches, and seizures "conducted by or known to" CBP from 2010 to present (or in some instances, an unlimited time period). Dkt. 75-1 at 5. The topics are in no way limited even to *forensic searches* conducted *by CBP*, much less the alleged forensic searches conducted by CBP on June 3 and August 8, 2024 at Dulles, the sole issue remaining in this case. *See* Dkt. 30, 45. In his Opposition to Defendants' Motion for a Protective Order, Plaintiff's arguments in support of these sweeping topics fall flat.

First, Plaintiff argues that he needs this expansive information going back *fifteen years* in order to show "future injury in fact to have standing," Dkt. 78 at 4. But Defendants have not

---

[1] As demonstrated in the letter undersigned counsel sent to Plaintiff's counsel following their meet and confer, Dkt. 75-2, it is untrue that "Defendants' Counsel was categorically opposed to any kind of deposition occurring," Dkt. 78 at 2. In fact, it was Plaintiff who categorically refused to narrow any of the facially overbroad topics noticed for any of the depositions.

2

argued that Plaintiff lacks standing to challenge the June 3 and August 8, 2024 searches. And to the extent Plaintiff must show *future* injury to obtain prospective injunctive relief, he has not explained, beyond bald *ipse dixit*, why discovery dating back to *2010* as opposed to *since 2024*—which, by his own account, is when his alleged present placement on the TSDS began—would be relevant. To that end, Defendants have produced a chart reflecting Plaintiff's encounters with CBP from 2023 to present. Perhaps recognizing this shortcoming in his argument, Plaintiff's opposition overstates his own allegations with regard to his encounters with CBP from 2010 to 2017. In his Opposition, Plaintiff argues he was "repeatedly searched while on the Watchlist from 2010 to 2017" without reasonable suspicion. *See* Dkt. 78 at 5. But Plaintiff's Amended Complaint says nothing about forensic searches from 2010 to 2017. *See* Dkt. 19, ¶¶ 268-75. Indeed, the Amended Complaint says little at all about these alleged searches. At most, Plaintiff claims, in entirely conclusory terms, that unspecified federal officers purportedly seized unidentified "electronic devices" on unspecified occasions between 2010 and 2017, and that in one instance "CBP Agents" unlocked his phone without his permission. As Judge Nachmanoff's dismissal order makes clear, it is only forensic searches that would be subject to the reasonable suspicion standard. *See* Dkt. 30 at 16. So even if previous forensic searches of Plaintiff's phone from seven to fourteen years before the two searches at issue somehow shed light on whether CBP had reasonable suspicion to conduct those two searches (they do not), Plaintiff's deposition topics are still hopelessly overbroad because they are not limited to such searches. For all these reasons, any searches that occurred *prior to 2024* have nothing to do with his current claim, which is about searches that occurred *after* he alleges he was re-added to the TSDS. *See* Am. Compl. ¶ 276.

Plaintiff also curiously argues that it would be appropriate to "[l]imit[] the [proposed 30(b)(6)] topics to border screenings where electronic searches were conducted." Dkt. 78 at 6,

3

and claims that "comparator evidence of non-forensic searches for the duration of his watchlist status is relevant and proportional to the needs of the case," Dkt. 78 at 5. But again, Plaintiff fails to explain why such "comparator evidence" from 2010 to 2017 has any bearing on whether reasonable suspicion supported CBP's two searches of his phones in 2024. As explained, basic border searches—which is presumably what the otherwise cryptic reference to "non-forensic searches" means—do not require reasonable suspicion under the Fourth Amendment and are unquestionably *not at issue* in this case. Indeed, it is difficult to imagine, and Plaintiff unsurprisingly does not explain, how any information about searches from years ago that did not require any level of suspicion bears on the basis for two searches last year that did require reasonable suspicion.

At bottom, Petitioner gives away the game about what he is really after by returning to his argument that he is entitled to testimony broadly about his treatment due to his purported TSDS status, because allegedly CBP "only searches Dr. Abu Irshaid's phone when it is also subjecting him to the other treatment commonly associated with watchlist placement, such as secondary screening." Dkt. 78 at 6. This case certainly began as one about what Plaintiff refers to as the "watchlisting enterprise." *Id.* at 9. But now that Judge Nachmanoff has dismissed the vast majority of plaintiffs, claims, and defendants, that is no longer what this case is about.[2] And given

---

[2] Plaintiff's insistence that he is entitled to know all information the government has ever obtained from searches of his electronic devices since 2010 is particularly at odds with Judge Nachmanoff's deliberate limiting of the claims in this case. *Id.* at 8-9. Plaintiff's lone attempt to defend this information as relevant to his request for expungement misses the mark. *See id.* (referencing Plaintiff's motion to compel); Dkt. 77 at 3-4 (motion to compel reply brief). To start, Plaintiff may not seek expungement of any information obtained from searches other than the two that remain in this case, and even as to those two, Plaintiff does not—because he cannot—explain why he needs to know what information may have been obtained. Plaintiff's sole remaining claim relates to his allegation that forensic searches were conducted on the two relevant dates based solely on his alleged watchlist status. Should he prevail on that claim and the Court ultimately concludes that expungement is a proper remedy—which Defendants do not concede—it may order

4

the extremely narrow scope of the sole remaining claim in this case, it is not a proper topic of discovery to explore the alleged ways Plaintiff's purported TSDS status generally impacts his life and travel.

Accordingly, for the reasons stated above, Plaintiff is not entitled to seek deposition testimony outside the scope of discovery as it relates to the sole remaining claim in this case, and thus the motion for a protective order should be granted.

**II.      The Court Should Preclude Testimony as to Topics 1 through 5 (with respect to CBP, the FBI, and TSC) to the Extent Such Requests Intrude on the Law Enforcement Privilege, Classified Information, and/or National Security Concerns.**

In his Opposition, Plaintiff makes two contradictory arguments regarding Defendants' assertion of the law enforcement privilege, precluding inquiry into classified information, and precluding discovery that would implicate national security concerns. First, Plaintiff claims that Defendants "do not need a court order to receive this protection" because they may "assert those privileges as objections during Rule 30(b)(6) depositions." Dkt. 78 at 7. Second, Plaintiff argues that Defendants have not stated with sufficient "particularity either what information sought by Plaintiff would violate this privilege or the specific national security risk the disclosure would cause." *Id.*

Neither argument has merit because, as noted in Defendants' Motion for a Protective Order, there is substantial overlap between the issues raised in the instant Motion for a Protective Order and Defendants' Opposition to Plaintiff's Motion to Compel. *See* Dkt. 63 and accompanying exhibits. Thus, Defendants move for a protective order for the same reasons they oppose Plaintiff's Motion to Compel—to assert the privilege in response to Plaintiff's requests for information.

expungement of the relevant information without knowing its specific content.

5

Moreover, Defendants' assertion of the law enforcement privilege is set forth in the two declarations attached to Defendants' opposition to Plaintiff's Motion to Compel, which explain "[t]he harm which could be caused by the release of this sensitive information outside of the carefully controlled context in which it is created, interpreted, and maintained." *See* Dkt. 63-2 at 6; *see also* Dkt. 63-3 and -4 (filed in part ex parte and under seal).[3] And contrary to Plaintiff's cursory argument that Defendants have not explained how the noticed depositions might invade the relevant privileges, another court concluded, in denying a motion to compel in litigation regarding the TSDS, that the sort of topics Plaintiff has noticed for deposition "by their very nature . . . would necessarily reveal sensitive law enforcement techniques, procedures, and confidential sources, and/or would lead to interference with important investigative efforts." Order at 13-16, *Salloum v. Kable*, No. 19-cv-13505 (E.D. Mich. Sept. 29, 2022), ECF No. 61. Further, notwithstanding whether the plaintiff there could overcome the presumption against lifting the privilege, "'the public interest in nondisclosure' outweigh[ed] 'the need of [the plaintiff] for access to the privileged information,'" even under an attorneys-eyes-only protective order. *Id.* at 21-23. This Court should reach the same conclusion and grant Defendants' motion.

### III. As to the FBI and TSC, Plaintiff Relies Wholly on Speculation To Seek Deposition Testimony regarding the "Watchlisting Enterprise" that is Far Beyond the Scope of this Case.

Plaintiff's arguments that he is entitled to depositions from both the FBI and TSC falter for all of the reasons above. As explained in Defendants' motion, Plaintiff's overbroad deposition

---

[3] As to SSI-protected material, Plaintiff offers no explanation for why he and his counsel failed to initiate any of the statutorily mandated procedures with which they claim they are intimately familiar during the discovery period in this case. Plaintiff may not use a 30(b)(6) deposition as an end-run around his failure to follow that process, and the fact that he might have been able to successfully complete the necessary steps had he bothered to take them is no basis to excuse his non-compliance.

topics as to the FBI and TSC stretch discovery in a case where the sole remaining claim pertains to two alleged forensic searches at the border, beyond the federal agency that conducted those searches.

Plaintiff acknowledges, as he must, that "CBP is both the initiator and primary agency responsible for the phone seizures." Dkt. 78 at 9. However, Plaintiff then pivots to rank speculation that "FBI and TSC officials may have been present" for one of the 2024 CBP searches because his phone was "seized by an agent who did not identify himself as a CBP Officer." *Id.* at 9. Such speculation is insufficient to merit 30(b)(6) deposition testimony from the FBI and TSC. Furthermore, contrary to Plaintiff's unsupported speculation, the decision to conduct a search of Plaintiff's phones on June 3 and August 8, 2024, was made by the CBP officers at Dulles.

Plaintiff argues that he is entitled to these depositions because "[t]opics only seek information regarding searches and seizures of Plaintiff's electronic devices, including the reason for those seizures and the content taken from his device." Dkt. 78 at 8. But Plaintiff then goes on to argue he is entitled to information held by agencies that are "leaders of the watchlisting enterprise . . . collected during law enforcement encounters." Dkt. 78 at 9. This argument again ignores the fact that this Court has dismissed Plaintiff's far-reaching claims regarding the TSDS. *See* Dkt. 30, 45.

Plaintiff's requests for depositions as to FBI and TSC are nothing more than an endeavor to conduct impermissible, broad-sweeping discovery into the TSDS. Accordingly, the Court should grant a protective order preluding these depositions.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court limit 30(b)(6) testimony to preclude depositions of the FBI and TSC, and to limit Topics 1 through 5 as to CBP

to information relevant to the sole remaining issue in this case.


Dated: December 4, 2025				Respectfully submitted,

							LINDSEY HALLIGAN
							UNITED STATES ATTORNEY AND
							SPECIAL ATTORNEY

							TODD W. BLANCHE
							DEPUTY ATTORNEY GENERAL

							ROBERT K. MCBRIDE
							FIRST ASSISTANT UNITED STATES
							ATTORNEY



						*By*:_____/s/_____
							ELIZABETH A. SPAVINS
							PETER B. BAUMHART
							Assistant United States Attorneys
							Office of the United States Attorney
							Justin W. Williams U.S. Attorney's Building
							2100 Jamieson Avenue
							Alexandria, Virginia 22314
							Tel:    (703) 299-3785
							Fax:    (703) 299-3983
							Email: Lizzie.Spavins@usdoj.gov
							Peter.Baumhart@usdoj.gov
							*Counsel for Defendants*

8