**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

OSAMA ABU IRSHAID, *et al.*,

        Plaintiffs,

    v.

PAMELA BONDI, United States Attorney
General, *et al.*,

        Defendants.

No. 1:24-cv-1405 (MSN/WBP)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(F)(1), Defendants, through undersigned counsel, hereby respectfully submit this memorandum of law in opposition to Plaintiff's motion for summary judgment (Dkt. 136).

### INTRODUCTION

The Court should deny Plaintiff's motion for summary judgment. To start, he musters no legal authority for the proposition that the reasons upon which U.S. Customs and Border Protection ("CBP") relied to conduct two border searches of his cell phones in 2024 were insufficient as a matter of law to constitute the necessary individualized suspicion. On the contrary, those reasons—which included multiple investigations of an organization Plaintiff leads for potential connections to terrorism financing, Plaintiff's own appearance on the public website of a foreign terrorist organization, and his acknowledgment of taking steps to prevent border officials from accessing information on his phone—are more than sufficient to establish individualized suspicion, as Defendants have explained in support of their own summary judgment motion.

Plaintiff's argument for summary judgment on his First Amendment claim, meanwhile, suffers from multiple fatal flaws. For one, he applies the wrong legal framework, ignoring both the fact that the Fourth Circuit has essentially rejected the entire premise of his claim, as well as the freedom-of-association test that would otherwise properly apply to a claim like his. Moreover, even if the retaliation framework on which Plaintiff relies *were* applicable, he still would not be entitled to summary judgment because the evidence does not establish, as a matter of law, either the necessary adverse effect on First Amendment activity of the two border searches or that those searches were caused by Plaintiff's association with American Muslims for Palestine ("AMP").

For these reasons, explained in greater depth below, the Court should deny Plaintiff's motion for summary judgment.

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants dispute the following assertions in Plaintiff's statement of undisputed material facts ("SUMF") (Dkt. 137 ("Pl. Br.")) at 1–7:

21.     Disputed. CBP Directive No. 3340-049A (Jan. 4, 2018) does not permit "an officer to perform an advanced search of an electronic device when 'there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern . . . .'" Rather, to perform an advanced search of an electronic device, there must be "reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern," *and* the officer must obtain "supervisory approval at the Grade 14 level or higher (or a manager with comparable responsibilities)." Dkt. 137-4 at 5, ¶ 5.1.4; *see* DEX5 at 11:9-14:2.

35.     Disputed. The reasonable suspicion supporting the August 8, 2024, search of Plaintiff's phone included, among other things, the information supporting the June 3, 2024,

search, which included Plaintiff's admission of deleting information from his phone. *E.g.*, DEX3 at 2–3.

37.    Disputed. The CBP officer did not have authority to make the decision whether to conduct an advanced search of Plaintiff's phone—that decision could only be made by a supervisor. Dkt. 137-4 at 5, ¶ 5.1.4; *see* DEX5 at 11:9-14:2. Further, the cited exhibits do not support the statement. The TECS records in fact state that the CBP officer requested authority for a search of Plaintiff's phone in part "[d]ue to [Plaintiff's] . . . own admission of sanitizing his device." DEX1 at 52; *see also id.* at 56; DEX3 at 2. As for Plaintiff's declaration, he attests only that "the agent asked [him] to provide [his] cellular phone for examination," but not necessarily a forensic search, in response to which Plaintiff stated that he was traveling with a backup phone rather than his primary phone "because of the Government's prior history of seizing and searching [his] phones," and further that he did not want the government to be able to access his primary phone. Dkt. 137-3, ¶¶ 11–13. The CBP officer then again requested the phone, and Plaintiff provided it, at which point the officer left the room. *Id.* ¶ 14.

There are also several assertions that, although Defendants do not dispute them as a factual matter, are not material because they do not "affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (citation omitted). Specifically, SUMF ¶¶ 5–8 are not material because they involve events preceding the two border searches at issue, often by many years, and which therefore have no bearing on Defendants' basis for the two border searches of Plaintiff's phone at issue in this case. *See* Dkt. 30 at 16 (explaining that reasonable suspicion is determined based on "specific and articulable facts known to the searching

officers" (citation omitted)); Dkt. 45.[1] SUMF ¶ 14, meanwhile, is not material because it concerns the detention of Plaintiff's phone following the June 3, 2024, encounter, the claim pertaining to which the Court has dismissed, Dkt. 45, and which would have no bearing on the reasons forming the basis of the search, which necessarily *preceded* the search. *See* Dkt. 30 at 19. SUMF ¶¶ 23–24 concern a CBP policy that was not promulgated until 2026, more than a year and a half after the searches at issue; this policy therefore could not have applied to the searches, making it irrelevant to the issues before the Court. Finally, SUMF ¶ 27 purports to challenge the organizational relationship between AMP and Students for Justice in Palestine reflected in a letter authored by Congressman James Comer, who is not a party to this case nor affiliated with any defendant in this case, all of whom are officers of the Executive Branch.

### ARGUMENT

Plaintiff's motion for summary judgment must be denied. Regarding his Fourth Amendment claim, the uncontroverted evidence fails to establish that CBP officers lacked the necessary individualized suspicion to conduct the two border searches as a matter of law. As for the First Amendment claim, the Fourth Circuit has rejected the legal theory on which Plaintiff relies, and the freedom-of-association test that would otherwise properly apply forecloses the claim as well. Finally, even using Plaintiff's (inapposite) retaliation framework, the evidence does not

---

[1] Some of the cited evidence is not even competent because it constitutes Plaintiff's "belie[f]" that his experiences from 2010–2017 were due to his claimed inclusion in the Terrorist Screening Dataset. SUMF ¶ 6. At summary judgment, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). This "requirement prevents statements in affidavits that are based, in part, upon information and belief—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." *Burwick v. Pilkerton*, 700 F. App'x 214, 216 (4th Cir. 2017). Plaintiff's belief is therefore not a valid evidentiary basis for opposing summary judgment, even if it were material (it is not).

establish either that those two searches had the necessary adverse effect or that they were caused by Plaintiff's associational activity.

**I.       Plaintiff Is Not Entitled to Summary Judgment on His Fourth Amendment Claim.**

Plaintiff's Fourth Amendment challenge to two border searches of his cell phones is subject to a reduced standard of suspicion under the Fourth Amendment: Specifically, to conduct a forensic search, Defendants need only have had "individualized suspicion of an offense that bears some nexus to the border search exception's purposes of protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband." *United States v. Nkongho*, 107 F.4th 373, 382 (4th Cir. 2024) (quoting *United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019)). As explained below, the uncontroverted evidence in this case soundly dispels Plaintiff's assertion that Defendants lacked such individualized suspicion as a matter of law.

**a.**       As an initial matter, there is no genuine, material dispute as to CBP's reasons for searching Plaintiff's phones. For the June 3, 2024, search, those reasons included (but were not limited to) (1) the investigations of AMP, of which Plaintiff is the executive director, by the House Committee on Oversight and Accountability and the Virginia Attorney General for potential ties to terrorism financing, (2) Plaintiff's appearance on the website of Al Qassam Brigades, a designated foreign terrorist organization, and (3) Plaintiff's statements during his secondary screening that reflect his actions to avoid government scrutiny of information on his cell phone. *See* SUMF ¶¶ 25–37; Dkt. 125 at 2–5.[2] The August 8, 2024, search was based on the same information as the June 3 search,

---

[2] If Plaintiff's alleged status in the TSDS (SAC ¶ 139)—an admission of his pleading by which he is bound, *see Butts v. Prince William Cnty. Sch. Bd.*, 844 F.3d 424, 432 n.3 (4th Cir. 2016)—is added to the mix, it would further buttress CBP's justification for the searches, *e.g.*, *Cyeef-Din v. Onken*, 586 F. Supp. 3d 1139, 1146 (D.N.M. 2022) (concluding that plaintiff's presence "on a federal terrorist watchlist" was one factor supporting reasonable suspicion for detention); *see*

plus the fact that Plaintiff was returning from travel to Jordan, which was known to CBP as a transit hub for travel into Syria and the Palestinian Territories—areas of active unrest. *See* SUMF ¶ 38; Dkt. 125 at 4–5.[3]

Regarding the June 3, 2024, search, Plaintiff purports to dispute that he told the CBP officer he had deleted information from his cell phone. SUMF ¶¶ 35–36. He relies on his own declaration for this point, which is contrary to the contemporaneous documentary evidence produced in discovery. *See id.*; Dkt. 137-3 ("PEX C"). *But see* Dkt. 125 at 4 (citing evidence). For one thing, it is not clear that such a "self-serving affidavit" is sufficient for summary judgment purposes. *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000); *see Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc.*, 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013) ("Such self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact[.]"), *aff'd*, 588 F. App'x 213 (4th Cir. 2014). More fundamentally, any dispute on this point is immaterial, because even on Plaintiff's own account, he told the CBP officer that "the phone [Plaintiff] was carrying was not [his] primary phone, but rather a backup phone that [he] traveled

---

*generally Elhady*, 993 F.3d at 214 (explaining that nomination to the TSDS "must rely upon 'articulable intelligence or information' which 'creates a reasonable suspicion that the individual is engaged, has been engaged, or intends to engage, in conduct constituting, in preparation for, in aid or in furtherance of . . . terrorism and/or terrorist activities.'" (citation omitted)).

[3] It is false that Defendants have "stated that [they] only relied on the reasons provided in [their] Rule 2(f) supplement to establish reasonable suspicion." Pl. Br. 14 n.5. As Plaintiff is well aware—having unsuccessfully moved to compel the additional reasons and then, after that motion was denied in relevant part, improperly asking about them anyway during a deposition, then filing another motion to compel, which the Court also denied, *see* Dkt. 54, 63, 75, 77–79, 81, 85, 88, 89, 101, 103—Defendants have made clear throughout this litigation that additional, privileged information also factored into the searches of Plaintiff's phones. *See, e.g.*, Dkt. 63 (filed in part *ex parte* and under seal) at 7–11; *id.*, DEX 2 ¶ 2, DEX 3 ¶¶ 8-16, 28-30, 39-43 & n.6. What Defendants have said is that they believe the reasons disclosed to Plaintiff are sufficient, even without reference to the privileged information, for the Court to conclude that reasonable suspicion supported those searches. *E.g.*, Dkt. 125 at 11. Should the Court disagree, however, Defendants have reserved their right to request that the Court consider the privileged information. *Id.* at 11–12.

with because of the Government's prior history of seizing and searching [his] phones," and further that "because [he] believed [his] phone may be searched, [he] did not want the Government to access it." PEX C ¶¶ 12–13.[4] In other words, Plaintiff admits he told the CBP officer that he had taken steps to conceal information on his cell phone from border authorities' scrutiny—which, like deleting information from a phone, is also "evasive behavior," an indisputably "pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Plaintiff is also incorrect that his evasive behavior with respect to the information on his phone was relevant only to the June 3, 2024, search. *See* SUMF ¶ 35. As the very evidence he cites makes clear, the August 8, 2024, search was based in part on "information available from the June 2024 inspection," as well as Plaintiff's travel to Jordan. PEX F at 2–3.[5] There is therefore no genuine dispute on this point.

**b.**      Having shown that there is no genuine dispute of material fact, the dispositive question is whether CBP's reasons for the two border searches at issue fail to constitute the necessary individualized suspicion as a matter of law.[6] As explained below, the uncontroverted evidence is

---

[4] Plaintiff's assertion that he told the CBP officer that he did not want the government to "be able to view personal pictures and messages" on his phone, PEX C ¶ 13, is irrelevant because, as explained below, the CBP officer was not required to rule out a putatively non-criminal explanation for Plaintiff's behavior in order to have reasonable suspicion. *See infra*, p. 9. Further, Plaintiff's suggestion that his statements about the phone should not be considered in the reasonable-suspicion analysis because the CBP officer purportedly asked for the phone beforehand, *see* Pl. Br. 7, 11–12, is based on a misunderstanding of how the decision to search his phone was made. As the uncontroverted evidence shows, the officer conducting the secondary screening had to first obtain approval from a supervisor before conducting the search—he did not (and could not) make that decision himself. DEX5 at 11:9-14:2. Thus, all of the reasons discussed above, including Plaintiff's statements regarding the information on his phone, were available to and considered by CBP in making the decision to search Plaintiff's phone. *E.g.*, DEX3 at 2.

[5] It appears this document has been filed as Dkt. 141-1.

[6] As Plaintiff points out, the Fourth Circuit has reserved decision as to whether the appropriate standard of suspicion is reasonable suspicion or probable cause. Pl. Br. 8 (citing *Nkongho*, 107 F.4th at 382). Defendants note that multiple district courts to confront the question have concluded that a reasonable suspicion standard applies. *See, e.g., United States v. Nkongho*, 2021 WL

more than sufficient to defeat Plaintiff's argument. Indeed, that evidence supports judgment as a matter of law *for Defendants*. *See* Dkt. 125 at 8–12.

Plaintiff's first error is to pursue a divide-and-conquer strategy, analyzing each individual reason in isolation and dismissing it as insufficient to establish reasonable suspicion. *See* Pl. Br. 9–12. As even he (ultimately) acknowledges, reasonable suspicion "look[s] to the totality of the circumstances," *United States v. Coleman*, 18 F.4th 131, 136 (4th Cir. 2021) (citation omitted)); *see* Pl. Br. 13, meaning that CBP's reasons for the searches have to be viewed holistically rather than individually, *see United States v. Perkins*, 363 F.3d 317, 327 (4th Cir. 2004) (explaining that courts may not "engag[e] in the sort of 'divide-and-conquer analysis' that treats each action by a defendant in isolation, finds each of them to be possibly innocent, and thus picks apart an officer's reasonable assessments" (citation omitted)).[7] So viewed, those reasons are more than sufficient to support individualized suspicion, notwithstanding Plaintiff's attempts to nitpick them.

Primarily, Plaintiff argues that the reasons upon which CBP relied cannot create reasonable suspicion because there are potentially non-criminal explanations for them. *See, e.g.*, Pl. Br. 11–12 (addressing the appearance on Al Qassam Brigades' website, Plaintiff's evasive conduct

---

4421883, at *4 n.3 (D. Md. Sept. 27, 2021); *United States v. Kolsuz*, 185 F. Supp. 3d 843, 858 & n.24 (E.D. Va. 2016) ("[D]efendant cites no case—nor have any been found—that stands for the proposition that more than reasonable suspicion is required for a nonroutine border search or seizure of any kind or extent.") (collecting cases), *aff'd*, 890 F.3d 133 (4th Cir. 2018), *as amended* (May 18, 2018). Indeed, even Plaintiff appears to apply the reasonable suspicion standard. *See* Pl. Br. 13. Ultimately, however, Defendants believe that the evidence adduced in this case would satisfy either standard.

[7] This defeats Plaintiff's argument that the multiple investigations into AMP's potential ties to terrorism financing cannot support reasonable suspicion in this case because an investigation alone "does not demonstrate reasonable suspicion without additional facts." Pl. Br. 10 (quoting *United States v. Peters*, 60 F.4th 855, 865 (4th Cir. 2023)). Here, of course, CBP did not rely on the investigations alone, but also "additional facts," *Peters*, 60 F.4th at 865, including but not limited to Plaintiff's appearance on the public website of a foreign terrorist organization and admission to taking steps to conceal information on his phone from government scrutiny.

regarding information on his phone, and his travel to Jordan).[8] This argument fundamentally misunderstands how the Fourth Amendment functions, as officers are not required to "rule out the possibility of innocent conduct." *Navarette v. California*, 572 U.S. 393, 403 (2014); *see Perkins*, 363 F.3d at 327 ("[T]he mere fact that particular conduct may be susceptible of an innocent explanation does not establish a lack of reasonable suspicion."); *accord United States v. Newland*, 246 F. App'x 180, 188 (4th Cir. 2007) ("Simply put, an officer is not required to eliminate the possibility of innocent conduct for the seizure to pass constitutional muster."). Rather, officers are entitled "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). This means that conduct that is "ambiguous and susceptible of an innocent explanation" may nonetheless support reasonable suspicion. *Wardlow*, 528 U.S. at 125. After all, "it must be rare indeed that an officer observes behavior consistent only with guilt and incapable of any innocent interpretation." *United States v. Foster*, 824 F.3d 84, 94 (4th Cir. 2016) (citation omitted).

Here, Plaintiff's appearance on a foreign terrorist organization's website, his deliberate concealment of information on his cell phone, and his travel to a transit hub into areas of active unrest may have innocent explanations—or they may not. "[C]ommonsense judgments and inferences about human behavior" at least raise a doubt on that score. *Wardlow*, 528 U.S. at 119. But even if there are innocent explanations, "factors consistent with innocent travel can, *when taken together,* give rise to reasonable suspicion." *United States v. Foreman*, 369 F.3d 776, 781

---

[8] Plaintiff's assertion that his picture and quote on the Al Qassam Brigades website were "published on the website *over ten years* before he was stopped," Pl. Br. 11, is misleading. Although the quote itself appears to be from 2014, there are two other posts on the same page dated October 18, 2023. DEX6. Thus, his picture and quote were published on the website at least as of that date—only eight months before the first border search.

(4th Cir. 2004). As Defendants have explained, the facts of this case easily clear the threshold of individualized suspicion. Dkt. 125 at 8–12. For purposes of Plaintiff's competing motion, what is pellucidly clear is that none of the legal authority he cites stands for the proposition that, taken together, CBP's justifications for the border searches at issue are insufficient *as a matter of law* to support reasonable suspicion. In *United States v. McSwain*, for instance, an officer stopped the defendant "for the sole purpose of ensuring the validity of [his] vehicle's temporary registration sticker," a purpose that "was satisfied" as soon as the officer had "approached the vehicle on foot and observed that the temporary sticker was valid and had not expired." 29 F.3d 558, 561 (10th Cir. 1994). This non-binding decision therefore hinged on the officer's personal observation of a dispositive, objective fact disproving the suspicion forming the basis of the stop; it does *not* hold, as Plaintiff seems to suggest, Pl. Br. 12, that an individual's ability to posit an innocent explanation for his conduct, standing alone, defeats reasonable suspicion. Nor could it, given the extensive authority cited above to the contrary.

As for *Reid v. Georgia*, the Supreme Court concluded there that the defendant's arrival from Fort Lauderdale in the early morning with only a shoulder bag as luggage could not support reasonable suspicion. 448 U.S. 438, 441 (1980). Plaintiff's attempt to shoehorn his travel to Jordan into *Reid* falls flat, as another case he cites—*United States v. Montero-Camargo*—makes clear. Indeed, although Plaintiff correctly quotes from *Montero-Camargo* that law enforcement should "be careful not to tar people with the sins of their neighbors," 208 F.3d 1122, 1139 n.32 (9th Cir. 2000) (en banc), he has missed the forest for the trees. Contrary to Plaintiff's insinuation, the Ninth Circuit there *upheld* a finding of reasonable suspicion based, in part, on the fact that the defendant was stopped in a "'high crime' area." *Id.* at 1139. This holding is consistent with the Supreme Court's explanation that, while "presence in an area of expected criminal activity, standing alone,

10

is not enough to support a reasonable, particularized suspicion that the person is committing a crime," an officer is "not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 528 U.S. at 124. CBP officers' consideration of Plaintiff's travel to Jordan was fully consistent with this rule, as that travel was merely one of several factors upon which CBP relied to justify the August 8, 2024, search of Plaintiff's phone.

Plaintiff also takes issue with CBP's reliance on the letter from the chairman of the House Committee on Oversight and Accountability, complaining that the CBP officers did not have first-hand knowledge of the facts underlying the assertions in that letter. Pl. Br. 10. But where, as here, a law enforcement officer relies on information provided by a different enforcement entity, the fact that the officer does not have personal knowledge of the underlying facts does not, by itself, defeat reasonable suspicion. *Cf. United States v. Hensley*, 469 U.S. 221, 229–32 (1985) (considering police department's reliance on flyer issued by different department); *United States v. Gaither*, 527 F.2d 456, 458 (4th Cir. 1975) (considering police officer's reliance on bulletin issued by FBI). As Plaintiff appears to acknowledge, Pl. Br. 10 (citing *Florida v. J.L.*, 529 U.S. 266, 272 (2000)), the letter functions similarly to a tip, albeit a very formal one from a sitting Member of Congress. Because the letter contains sufficient "indicia of reliability," *J.L.*, 529 U.S. at 270, there is nothing untoward about CBP's consideration of it. To start, the letter came from Congressman James Comer, the Chairman of the House Committee on Oversight and Accountability, an elected official "whose reputation can be assessed and who can be held responsible if h[is] allegations turn out to be fabricated." *Id.*; *see United States v. Singh*, 363 F.3d 347, 355 (4th Cir. 2004) ("[A] tip from a known informant is entitled to greater weight than a tip from an anonymous informant."). The letter itself was also issued publicly, *see United States v.*

11

*Mitchell*, 963 F.3d 385, 394 (4th Cir. 2020) (identifying the fact that tipster "reported to a police officer in public" as a fact that "increas[ed] . . . reliability" of the tip), and it "provides substantial detail about the individuals and the alleged criminal activity it describes," as well as "disclos[ing] the basis" for the information it contains, *United States v. Elston*, 479 F.3d 314, 318 (4th Cir. 2007). Indeed, the letter is replete with citations to source material. *See generally* DEX2. The letter therefore bears sufficient indicia of reliability, particularly when considered in conjunction with the other facts on which CBP relied, to support reasonable suspicion in this case.

*    *    *

Plaintiff is not entitled to summary judgment on his Fourth Amendment claim because he does not, and cannot, show that the facts upon which CBP relied to conduct the border searches of his phones—about which there is no genuine dispute of material fact—do not constitute individualized suspicion as a matter of law. On the contrary, CBP's reasons for the searches *are* reasonable suspicion as a matter of law, as Defendants have argued elsewhere. On this point, therefore, the Court should deny Plaintiff's motion.

## II.    Plaintiff Is Not Entitled to Summary Judgment on His First Amendment Claim.

Plaintiff's insistence that he is entitled to summary judgment on his First Amendment claim is similarly misguided. As explained below, Plaintiff does not even apply the correct legal analysis to his claim, which alone defeats his motion. But even if the Court were to apply the framework Plaintiff relies on, he is still not entitled to summary judgment.

a.    Plaintiff's argument starts off on the wrong foot by applying an incorrect analytical framework. *See, e.g.*, Pl. Br. 14 (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)). As Defendants have explained, Plaintiff's theory that the First Amendment insulates putatively protected conduct from official scrutiny at the border cannot be

12

squared with the Fourth Circuit's decision in *United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005), where the court refused to "carve out a First Amendment exception to the border search doctrine." *Id.* at 506; *see* Dkt. 125 at 13–15. However the First Amendment may operate in this context, it does not "create a sanctuary at the border," *Ickes*, 393 F.3d at 506, which is exactly what Plaintiff's claim seeks to do. On that ground alone, summary judgment should be denied.

But even if the First Amendment did constrain border officials with respect to Plaintiff's freedom of association, the claim would still fail. As Defendants pointed out—and Plaintiff also fails to address—the Second Circuit considered a materially similar claim in *Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007), which rejected a First Amendment challenge to a special investigation operation that subjected the plaintiffs to elevated screenings and searches at the border premised solely on their attendance at an Islamic conference. *See* Dkt. 125 at 16–17.[9] The same result should obtain here, where, for the reasons explained above, CBP did not rely solely on activity allegedly protected by the First Amendment, but on several individualized facts about Plaintiff that form reasonable suspicion.

**b.**     Finally, Plaintiff's motion for summary judgment fails even using his preferred, if inapposite, framework. Under that test, Plaintiff must—but cannot—demonstrate that the challenged conduct "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights," *Constantine*, 411 F.3d at 500 (citation omitted), an analysis that is informed by both Plaintiff's "actual response to the retaliatory conduct" as well as the need to "administer[]" his cause of action "in a way that balances governmental and private interests to avoid imposing

---

[9] In reaching this conclusion, the Second Circuit applied the freedom-of-association framework articulated in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984)—a test that Plaintiff does not acknowledge in his brief. *See Tabbaa*, 509 F.3d at 102 (noting that "[c]ourts have regularly applied this test when evaluating associational claims").

liability in everyday encounters," *Snoeyenbos v. Curtis*, 60 F.4th 723, 730 (4th Cir. 2023). Here, as Defendants have shown, the uncontroverted evidence establishes that Plaintiff has not been deterred from exercising his First Amendment rights in any meaningful way by the two border searches of his phones at issue; on the contrary, by his own admission he remains a prolific participant in a range of expressive and associational activities, both in his work for AMP and in his personal capacity. *See* Dkt. 125 at 18–20.[10] Further, as Defendants also pointed out—and as one case Plaintiff cites for support makes clear—there are cases where "the government's legitimate interests in managing its own functions are so strong that they dwarf the opposing private interests." *McClure v. Ports*, 914 F.3d 866, 873 n.3 (4th Cir. 2019) (affirming summary judgment on First Amendment claim) (cited at Pl. Br. 14). Given the critical nature of the government's border-screening operations to national security—at least as weighty an interest as a state transit authority's control over access to restricted areas of its facilities—this is one of those cases. Dkt. 125 at 21 (citing *McClure*, 914 F.3d at 872–73).

Nor can Plaintiff carry his burden of establishing that, as a matter of law, it was his First Amendment activity that caused the border searches of his phones. *See, e.g.*, *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 654 (4th Cir. 2017). Plaintiff asserts that it was his bare affiliation with AMP that factored into CBP's decisions to conduct those searches, Pl. Br. 17, but this misses the relevant context of the evidence in this case. It was not Plaintiff's association with AMP, as

---

[10] Plaintiff's decision to travel internationally without his personal cell phone does not amount to a First Amendment injury. *See* Pl. Br. 16. Of the two cases he cites for support, one involved a challenge to a federal law prohibiting dissemination of certain content over the Internet, *Reno v. ACLU*, 521 U.S. 844 (1997)—no such content-based law is at issue here—and the other was not a First Amendment case at all, but rather discussed the privacy interests individuals have in their cell phones under the Fourth Amendment, *Riley v. California*, 573 U.S. 373 (2014). In any event, Plaintiff himself admitted that he was doing this at least as early as 2022, two years *before* the border searches at issue, meaning that this claimed "injury," even if it were actionable, could not have been caused by those searches. *See* DEX4 at 78:12–79:5.

14

protected expressive activity, that CBP relied on, but rather that Plaintiff had a leadership role in an organization that was undergoing multiple investigations, one by a congressional committee and one by the Virginia Attorney General, into potential ties to terrorism financing. *See* DEX2. Those investigations, which are distinct from Plaintiff's putatively expressive activity, are "an obvious alternative explanation for [CBP's] conduct, which negates any inference of retaliation" under the First Amendment. *George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013); *see also United States v. Young*, 260 F. Supp. 3d 530, 545 (E.D. Va. 2017) ("[T]he First Amendment 'does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993))), *aff'd*, 916 F.3d 368 (4th Cir. 2019). Thus, Plaintiff cannot show that, as a matter of law, it was his First Amendment activity that caused the searches.[11]

## CONCLUSION

Plaintiff's motion for summary judgment is without merit. His individualized nitpicking of CBP's justifications for the border searches of his cell phones is contrary to governing law, and he cites no legal authority establishing that those justifications, taken together, are insufficient as a matter of law to form the necessary individualized suspicion under the Fourth Amendment. His First Amendment claim fares no better, as the Fourth Circuit has rejected the legal premise of his claim; the freedom-of-association test that would otherwise apply weighs in Defendants' favor;

---

[11] Perhaps in tacit acknowledgment of this defect in his claim, Plaintiff subtly tries to move the goalposts by arguing that the letter from Congressman Comer, which both notes the Virginia Attorney General's investigation and reflects the House Oversight Committee's own investigation, is tainted by "retaliatory animus" due to "AMP's speech." Pl. Br. 17–18. But this is not a case about *AMP's speech*; rather, to be entitled to summary judgment, Plaintiff must show that it was *his own First Amendment conduct*, in the form of his *association with AMP*, that caused the border searches of his phones.

and the evidence does not make out the necessary adverse effect or causation even under Plaintiff's preferred test. Accordingly, the Court should deny Plaintiff's motion.

Dated: March 13, 2026

Respectfully submitted,

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL


By: _____/s/_____
ELIZABETH A. SPAVINS
PETER B. BAUMHART
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3785
Fax:    (703) 299-3983
Email: Lizzie.Spavins@usdoj.gov
Peter.Baumhart@usdoj.gov
*Counsel for Defendants*