IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

OSAMA ABU IRSHAID,
        *Plaintiff,*

   v.

MARKWAYNE MULLIN, ET AL,
        *Defendants.*

No. 1:24-cv-1405-MSN-WBP

## **ORDER**

As this matter currently stands, Plaintiff Osama Abu Irshaid has asserted two claims against United States Government defendants for violation of the Fourth Amendment and First Amendment retaliation arising out of defendants' searches of his cell phones at Washington Dulles International Airport in 2024. ECF 115. Now before the Court are the parties' Cross-Motions for Summary Judgment (ECF 124, 136) and Defendants' Motion to Seal (ECF 153). For the following reasons, the Court will DENY the Cross-Motions for Summary Judgment (ECF 124, 136) and GRANT Defendants' Motion to Seal (ECF 153).[1]

---

[1]    In ruling on summary judgment, the Court has reviewed the parties' positions as to the propriety of considering certain supplemental material provided by Defendants, ECF 155-58, which Defendants request be considered *ex parte* in order to preserve their invocation of the law enforcement privilege. ECF 159. The Court declines to consider such material. Defendants cite no binding or persuasive authority that suggests that it is proper to use the law enforcement privilege as both a sword on the merits and shield from disclosure. *See, e.g.*, *Ibrahim v. DHS*, 2012 WL 6652362, at *5 (C.D. Cal. Dec. 20, 2012) ("[W]here the holder affirmatively seeks to use the evidence to win or end the case, then, of course, any privilege must be deemed waived and both sides have access to it . . . Here, the government seeks to affirmatively use allegedly privileged information to dispose of the case [] without ever revealing to the other side what its secret evidence might be."). Because Defendants' papers as to the summary judgment motions do not rely on the supplemental materials and because Defendants request to withdraw these materials rather than disclose them Plaintiff or his attorneys in the event that the Court concludes that *ex parte* consideration is inappropriate, ECF 166 at 4, the Court will deem such supplemental materials withdrawn.

## I.    FACTUAL BACKGROUND[2]

Plaintiff Dr. Osama Abu Irshaid is the Executive Director of American Muslims for Palestine ("AMP" or "AJP Educational Foundation"). ECF 141 Plaintiff's Statement of Undisputed Facts ("PSUMF") ¶¶ 1, 2; ECF 125 Defendants' Statement of Undisputed Facts ("DSUMF") ¶ 13. AMP is a nonprofit organization dedicated to public education regarding the "just cause of Palestine and Palestinian rights and advocat[ing] for self-determination, justice, and liberation." PSUMF ¶ 2; DSUMF ¶ 13. AMP engages in educational programming, political boycott campaigns, and protests in furtherance of its mission and "to call attention to Israel's crimes against Palestinians and push for change on American policy towards Palestine and Israel." PSUMF ¶ 3; DSUMF ¶ 13. As AMP Executive Director, Plaintiff participates in conferences and fundraisers, gives lectures and sermons, makes media appearances, and represents AMP at protests and other events. PSUMF ¶ 3.

On June 3, 2024, Plaintiff arrived at Washington Dulles International Airport on a flight from Doha, Qatar. PSUMF ¶ 9; DSUMF ¶ 1. He was met by CBP agents prior to primary border inspection and was escorted to secondary inspection. *Id*. Plaintiff was then questioned by an agent about various topics (that no one suggests are relevant to the current motions) for about one hour. PSUMF ¶ 9. During this time, the agent asked if Plaintiff was in possession of a letter from Congressman James Comer of the House Committee on Oversight and Accountability, which Plaintiff confirmed that he had received.[3] DSUMF ¶¶ 2, 3; ECF 125-1 at CBP0000027-29 ("[Plaintiff] was informed that it was the desire of CBP to ensure that the subject was in possession

---

[2]    The following facts are undisputed unless otherwise indicated. Pursuant to Federal Rule of Civil Procedure 56(g), the Court further finds the undisputed facts to be established in this case.

[3]    The relevant CBP TECS reports describe the Comer letter as "regarding activities attributed to Students for Justice in Palestine – an organization responsible for the civil unrest on many US campuses." ECF 125-1 at CBP0000028. The evidence in the record does not suggest that the agent and Plaintiff had any further discussion regarding the Comer letter beyond simply confirming that Plaintiff received it.

of [the letter] . . . regarding activities attributed to Students for Justice in Palestine – an organization responsible for the civil unrest on many US campuses."); ECF 125-2. The letter, which was dated May 29, 2024, and addressed to "National Students for Justice in Palestine[,] c/o Dr. Osama Abuirshaid[,] American Muslims for Palestine," stated things such as:

- The Committee was "conducting oversight of the funding sources of groups supporting illegal activities around the country, including at institutions of higher education, by individuals spouting pro-Hamas propaganda and engaged in antisemitic harassment and violations of the civil rights of Jewish students."

- "At illegal encampments on college campuses, many individuals have championed antisemitic rhetoric calling for the elimination of Jewish people from Israel, employing 'From the river to the sea, Palestine will be free' and 'Death to Israel' as rallying cries."

- The Committee was "concerned that organizations promulgating pro-Hamas propaganda and engaging in illegal activities at institutions of higher education might be receiving funding or other support from foreign or domestic sources which support the aims of Hamas or other foreign terrorist organizations."

- The Committee was seeking "documents and information from your organization to facilitate oversight into how pro-Hamas propaganda and illegal encampments are being funded."

- National Students for Justice in Palestine ("National SJP") was "founded and controlled by [AMP]," citing the lawsuit *Parizer v. AJP Educational Foundation, Inc.*, No. 1:24-cv-00724 (E.D. Va. 2024).

- AMP had "substantial ties to Hamas via its financial sponsor" AJP Educational Foundation, Inc, which was "currently under investigation by the Virginia Attorney General for violating state charitable solicitation laws and 'benefiting or providing support to terrorist organizations.'"

- "According to the Anti-Defamation League, AMP is the alter ego of the Islamic Association of Palestine [], once the main propaganda arm for Hamas in the U.S., which was dissolved in 2004 after being implicated in terror finance"

ECF 125-2. The letter closed with a request for documents, noting that the Committee had "broad authority to investigate 'any matter' at 'any time' under House Rule X." *Id*. The interviewing agent also asked Plaintiff about the appearance of his photograph and a quote attributed to him on the public website of the Al-Qassam Brigades, an entity designated as a foreign

3

terrorist organization by the State Department in 1997. ECF 125-1 at CBP0000017; ECF 130 at 2; ECF 132. Plaintiff explained to the agent that he was "familiar with the situation but had no part in its posting and claimed that the article was likely taken from another publication and then re-published." ECF 125-1 at CBP0000017. A screenshot of the website shows that (1) the entire website is in Arabic; (2) the quote attributed to Plaintiff is dated July 19, 2014; and (3) other links on the page are dated October 18, 2023.[4] ECF 132.

Additionally, after discussion of Plaintiff's contacts while in Qatar, the interviewing agent "told [Plaintiff] that he was likely familiar with electronic media searches at the border and asked if a review would indicate with whom he had contact." ECF 125-1 at CBP0000016. At this point, the parties' accounts diverge somewhat. There is no disagreement that Plaintiff informed the agent that he was traveling with two cell phones and that one was a backup,[5] *id.* at CBP0000017; ECF 137-3 ¶ 12, although Plaintiff declares that he said so after the agent asked to "provide my cellular phone for examination." ECF 137-3 ¶ 11. Plaintiff declares that he explained that he traveled with a backup because of the "Government's prior history of seizing and searching my phones" and because he "believed [his] phone may be searched, [he] did not want the Government to access it and be able to view personal pictures and messages." ECF 137-3 ¶¶ 11, 12, 13; *see also* ECF 125-1 at CBP0000017 ("Subject was asked why he traveled with two phones and he stated that it was for a backup as subject previously experienced a phone detention by CBP in the past."). However, Defendants' records provide that Plaintiff, in response to the agent's question on electronic search, stated he was "aware and that was why he traveled with two phones" and that "he had removed

---

[4]    Defendants refuse to state whether searching agents could read or understand any part of the website, including the quote, asserting the law enforcement privilege. PSUMF ¶ 34.

[5]    The facts set forth in the remainder of this paragraph are disputed and are not deemed established in this case.

the content from one after an invasive search during which he claimed the officer looked at family photos." ECF 125-1 at CBP0000016. More specifically, Plaintiff stated that he had "deleted information from [phone with number ending 6030] because of a previous inspection that he felt was invasive due to the inspecting officer viewing family photos."[6] *Id.* at CBP0000017. The agent interpreted Plaintiff's statements as an "admission of sanitizing his device." *Id.*; ECF 130 at 2 ("Plaintiff admitted to deleting information from his device.").

After this exchange, Plaintiff provided the passcode to his Samsung Galaxy A14 cell phone (IMEI -6928) to the agent. ECF 125-1 at CBP0000016. Based on the totality of circumstances, "including the foregoing facts," the agent was concerned that Plaintiff "may be tied to organizations allegedly engaged in funding designated foreign terrorist organizations" and determined there was reasonable suspicion to conduct an "advanced" or "forensic" search of Plaintiff's Galaxy A14 cell phone, which was then performed. *E.g.,* DSUMF ¶ 6 & n.3; ECF 130 at 2; ECF 125-1 at CBP0000017. After about two hours, the agent returned and told Plaintiff that inspection of his phone was not complete and that his phone would be returned at a later date, but the phone was not returned until after this case had been filed. ECF 137-3 ¶¶ 15, 16.

Two months after this encounter, on August 8, 2024, Plaintiff arrived at Dulles on a flight from Amman, Jordan, by way of London Heathrow Airport. PSUMF ¶ 15; DSUMF ¶ 8. Plaintiff was again intercepted by CBP agents and escorted to secondary inspection. PSUMF ¶ 16; DSUMF ¶ 8. Plaintiff was questioned on the nature of his trip to Jordan and he explained that it was for pleasure. ECF 125-1 at CBP0000003. Plaintiff also expressed some frustration with being repeatedly questioned by CBP. *Id.* Plaintiff declares that at one point, agents asked for his cell phone and he once more explained that he was carrying not a primary phone but a backup because

---

[6]    However, the phone with number ending 6030 was not searched on June 3, 2024. ECF 125-1 at CBP0000017.

of the "Government's history of seizing and searching my phones." ECF 137-3 ¶¶ 21, 22. Defendants' records state, however, that during questioning, Plaintiff "openly pulled out his electronic device and said 'I know you will search this phone so here it is.'" *Id*. The interviewing agent asked Plaintiff if he had other electronic devices, to which Plaintiff stated that he had purchased a new Nokia phone that he "uses as a burner just because he always gets stopped and that it is in his checked bags." *Id*. Based on "the totality of circumstances, including the information from the June 3, 2024 encounter" and Plaintiff's travel to Jordan, "which serves as a transit hub for travel to Syria and the Palestinian Territories due to their shared borders and which were active areas of unrest at the time," agents determined there was reasonable suspicion to conduct an "advanced" or "forensic" search of Plaintiff's two cell phones. *Id*.; ECF 130 at 2-3; DSUMF ¶ 9. This time, the search was performed and both of Plaintiff's phones were returned after two hours.[7] ECF 125-1 at CBP0000003; ECF 137-3 ¶ 25.

In terms of the effect of the two searches on Plaintiff, he attests that he is now "more selective about the conference and media appearances he makes in his capacity as Executive Director of AMP because of the Government's searches of his phone and the other scrutiny he faces at the border," ECF 137-2, but he remains heavily involved in AMP's activities and AMP itself remains very active in its mission. ECF 125 at 18, 19; ECF 125-4 at 21-29. Although he is an academic expert on Hamas, he is "very careful now about discussing" it and other Palestinian geopolitical issues "because I am always cognizant that this could be used against me." ECF 137-1 at 60:20-61:15. He also states that he avoids using "controversial phrases" such as "From the river to the sea, Palestine will be free," because of his belief that he will be targeted for border

---

[7]     Plaintiff's declaration states that only one phone was taken and returned by agents and Defendants' briefing refers to only one phone, but various CBP records indicate that two phones were searched and returned. ECF 125-1 at CBP0000003, -5-7. Whether one phone or two phones were searched on August 8 is immaterial.

searches, but he has "never thought it's helpful for our messaging[.]" ECF 137-2; ECF 125-4 at 75:13-19. Plaintiff has repeatedly attributed changes in his expressive behaviors to the October 7 terrorist attacks. ECF 125-4 at 56-58, 67, 70, 71, 73,75. And while he claims that he travels with a "dumb" basic phone because of the searches, which limits his speech while overseas, ECF 137-1 at 76:14-11, he also states that was traveling with a basic phone in 2022. ECF 125-4 at 78:17-79:5.

## II.    LEGAL STANDARD

Summary judgment is proper where the moving party has demonstrated that "there is no genuine issue of material fact," and the movant deserves judgement as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, (1986); *Evans v. Tech. Apps. & Servs. Co*., 80 F. 3d 954, 958–59 (4th Cir. 1996). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F. 3d 179, 183 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248). Where, as here, the Court is faced with cross-motions for summary judgment, the Court must review each motion separately, taking the facts in the light most favorable to the nonmovant. *Rossignol v. Voorhaar*, 316 F. 3d 516, 523 (4th Cir. 2003).

## III.    DISCUSSION

Having reviewed the record, the Court observes that the vast majority of facts presented by all parties are undisputed, but finds that summary judgment cannot be granted for any party on the Fourth Amendment claim because there is a genuine, material issue as to what exactly Plaintiff stated to interviewing CBP agents on June 3, 2024 regarding his "backup" phone and any "removal," "deletion," or "sanitization" of information from it. *Compare* ECF 125-1 at CBP00000016-17 *and* ECF 130 at 2 *with* ECF 137-3 ¶¶ 11-14. There is a meaningful difference

between the parties' accounts of this exchange, which portray either some intent to destroy or conceal evidence from the government or benign expression of concern for personal privacy, and that difference bears directly on ultimate question of the existence of reasonable suspicion in the totality of circumstances.

Because the existence of a Fourth Amendment violation is relevant to the resolution of Plaintiff's First Amendment retaliation claim, the Court further cannot conclude that summary judgment is warranted for any party on that claim as well. *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019) (First Amendment retaliatory arrest claim requires plaintiff to prove absence of probable cause in addition to "but-for" causation); *George v. Rehiel*, 738 F. 3d 562, 586 & n.27 (3d Cir. 2013) (on motion to dismiss, finding no First Amendment retaliation claim where Fourth Amendment violation arising out of border search and questioning not established); *Kariye v. Mayorkas*, 650 F. Supp. 3d 865, 902 (C.D. Cal. 2022) (on motion to dismiss, finding no First Amendment retaliation claim where "routine" border search did not violate Fourth Amendment and did not "chill" a person of ordinary firmness).[8]

## IV.    CONCLUSION

For the foregoing reasons, summary judgment for any party is currently unwarranted. Owing to the number of undisputed facts that have been deemed established in this case, recounted above, and the narrowness of the remaining issues, the Court does not anticipate that the bench trial in this matter needs be extensive, and the parties should focus their presentations appropriately.

---

[8]    Although the Court is currently unable to resolve the First Amendment retaliation claim due to its interaction with the Fourth Amendment claim, the Court also notes that the record as to the "retaliatory animus" or "subjective animus" of CBP to punish Plaintiff is muddled. *Nieves*, 587 U.S. at 398-99, 400-01; *see also id*. at 401-02 ("protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest"). The parties may wish to address this issue at trial.

Accordingly, it is hereby

ORDERED that the parties' cross-motions for summary judgment (ECF 124, 136) are DENIED; and it is further

ORDERED that Defendants' Motion to Seal (ECF 153) is GRANTED; and it is further

ORDERED that the parties will submit revised exhibit and witness lists on or before May 13, 2026.

**IT IS SO ORDERED.**

/s/<br>
Michael S. Nachmanoff<br>
United States District Judge

May 7, 2026
Alexandria, Virginia

9