UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

OSAMA ABU IRSHAID,
*Plaintiff*,

v.

MARKWAYNE MULLIN, *et al.*,
*Defendants.*

No. 1:24-cv-01405-MSN-WBP

# ORDER

This matter comes before the Court on Plaintiff's Motion for Remedies (ECF 189). Defendants have filed a response, ECF 192, and Plaintiff filed a Reply, ECF 195. Having reviewed the Motion and the Parties' briefing, and for good cause appearing, the Court will **DENY** in part and **GRANT** in part the Motion.

## I. BACKGROUND[1]

Plaintiff, Dr. Osama Abu Irshaid, is an American citizen of Palestinian descent and the Executive Director of American Muslims for Palestine ("AMP"). ECF 115 ¶¶ 120-21. AMP is a non-profit "with the purpose of educating the American public and media about issues related to Palestine and Palestine's rich cultural history" and "fiercely and unapologetically advocat[ing] for the rights of Palestinians in the face of apartheid, occupation, and genocide." *Id.* ¶¶ 123-24. As AMP's Executive Director, Plaintiff participates in conferences and fundraisers, gives lectures, and sermons, makes media appearances, and represents AMP at protests and other events. ECF 186 at 2. These duties necessitate Plaintiff's extensive international travel.

[1] A more complete recitation of the factual background can be found in the Court's July 15, 2026, Order. ECF 186.

AMP has received intense governmental scrutiny. In December 2023, the Virginia Attorney's General office issued a civil investigative demand to AMP alleging that AMP used its funds to support terrorists. ECF 115 at ¶ 128. In May and June of 2024, the House Committee on Oversight and Accountability issued letters "declaring an investigation of AMP's alleged ties to terror groups." *Id.* ¶ 127. This scrutiny has extended to Plaintiff.

On June 3, 2024, Plaintiff landed at Washington Dulles International Airport on a flight from Doha, Qatar. ECF 186 at 2. Prior to the United States Customs and Border Protection ("CBP") primary border inspection point, Plaintiff was met by CBP agents and escorted to secondary inspection. *Id.* There, Plaintiff was questioned by CBP agents for roughly one hour. *Id.* A CBP agent asked Plaintiff if he was in possession of the Oversight Committee's letter. *Id.* at 2-3. Plaintiff said he was but dismissed the letter as a "misunderstanding" and that it amounted to little more than political actors targeting Plaintiff. *Id.* at 4. Plaintiff was also questioned about his photograph and a quote attributed to him on the public website of the Al-Qassam Brigades, an entity designated as a foreign terrorist organization by the State Department in 1997. *Id.* at 4-5. The interview turned to the topic of electronic media searches at the border and a CBP agent asked if a review of Plaintiff's phone would indicate with whom he had contact. *Id.* at 6. Plaintiff explained that he was traveling with two cell phones because during past border inspections a CBP agent had reviewed personal and family content on his phone. *Id.* at 7. Plaintiff started traveling with a backup phone to prevent the government from accessing his personal information, family photos, and messages. *Id.*

The CBP agent then performed a "basic" or "manual" inspection of Plaintiff's phone. *Id.* The CBP agent found there to be a "suspiciously minute amount of information on the device," leading the agent to believe Plaintiff had "deleted much, much more than personal information."

*Id.* at 8. The CBP agent then sought and received supervisory approval for an "advanced" search of the device pursuant to CBP Directive 3340-049A (January 4, 2018). *Id.* The CBP agent performed an advanced search of Plaintiff's device, and, after about two hours, told Plaintiff that the inspection was not complete and that his device would be returned at a later date. *Id.* When Plaintiff filed this suit, Defendants had not yet returned the device. *Id.* The CBP agent did not search Plaintiff's second phone. *Id.*

On August 8, 2024, Plaintiff again landed at Dulles, following a 39-day trip to Jordan. *Id.* at 9. Plaintiff was again intercepted by CBP officers and escorted to secondary inspection. *Id.* Plaintiff was selected for secondary inspection based on the details of the June 3, 2024, secondary inspection. *Id.* Plaintiff, expressing frustration with his repeated questioning by CBP, pulled out his phone and said "I know you will search this phone so here it is." *Id.* at 10. The CBP agent sought and received supervisory approval to perform advanced searches on Plaintiff's two cell phones. *Id.* The CBP agent performed the advanced searches and, after about two hours, returned both phones. *Id.*

On January 16, 2026, Plaintiff filed an Amended Complaint (ECF 115) alleging Defendants violated his First and Fourth Amendment rights by conducting an advanced search on his cell phones at Dulles Airport on June 3, 2024, and again on August 8, 2024. On May 18, 2026, a one-day bench trial was held on Plaintiff's claims. *See* ECF 185. Defendants sought to justify the advanced border searches without reference to confidential information in the government's possession.

On July 15, 2026, this Court issued its post-trial Memorandum Opinion and Order. ECF 186. Based on the evidence presented at trial, the Court determined "that Plaintiff is entitled to judgment as to his Fourth Amendment claim (Count I) and Defendants are entitled to judgment on

the First Amendment claim (Count II)." *Id.* at 1. With respect to Plaintiff's Fourth Amendment claim, the Court concluded that the Defendants' asserted justifications for conducting advanced searches on Plaintiff's devices did not provide "reasonable suspicion of Plaintiff engaging in terrorism financing" such that those searches violated Plaintiff's Fourth Amendment rights. *Id.* at 20. The Court then instructed the Parties to file briefing "on the appropriate remedy in this matter" given the Court's findings. *Id.* at 26.

## II. LEGAL STANDARD

"Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Ostergren v. Cuccinelli*, 615 F.3d 263, 288-89 (4th Cir. 2010). Thus, although "[w]hen fashioning appropriate injunctive relief[] 'a federal district court has wide discretion,'' "it must 'mold its decree to meet the exigencies of the particular case.'" *Fraser v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 689 F. Supp. 3d 203, 211 (E.D. Va. 2023). "Prospective relief" can only "be justified by prospective injury." *State of Md. v. U.S. Dep't of Ag.*, 151 F.4th 197, 209 (4th Cir. 2025); *see also City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983).

## III. ANALYSIS

Plaintiff requests three remedies. First, he urges the Court to "exercise its statutory and equitable authority to strike down CBP's 'Border Search of Electronic Devices' Directive as an unconstitutional policy authorizing searches beyond the agency's legal authority." ECF 189 at 2. Second, Plaintiff requests the Court grant "injunctive relief ordering border agents not to perform advanced searches on his electronic devices for the reasons listed in Defendants' TECS Reports—including those reasons which are redacted." *Id.* at 12. Third, Plaintiff seeks an order requiring Defendants to "destroy all information unlawfully obtained from Dr. Abu Irshaid's devices and

ensure that any third party to which it disseminated that information does the same." *Id.* at 18. Defendants oppose the requested relief, arguing that Plaintiff has failed to show the "requested remedies are appropriate given the narrow scope of the issues at trial and the Court's post-trial memorandum opinion." ECF 192 at 2. As an alternative, Defendants suggest they "provide an appropriate notification, such as a notation or correction within their systems that the information was obtained in violation of the Fourth Amendment and thus should not be relied upon." *Id.* at 11. The Court addresses each proposed remedy in turn.

**A. Vacate CBP's Border Search Directive**

Plaintiff first asks the Court to strike down CBP's Border Search of Electronic Devices Directive. *See* ECF 189 at 2; *see also* CBP Directive 3340-049A. Plaintiff purports to identify two "independent authorities" empowering this Court to grant the requested relief—the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), (C), and the Court's inherent equitable authority to provide complete relief, *see* ECF 189 at 2. Neither source of authority, however, empowers the Court to vacate the CBP Directive in this case.

The APA undoubtedly allows a court to "hold unlawful and set aside agency action," that is not "in accordance with law" or "contrary to constitutional right." 5 U.S.C. § 706(2); *see also Am. Fed. of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 119 (D. Md. 2025). But to unlock the remedial power authorized by the APA, a plaintiff must, of course, bring (and prevail on) an APA claim. *See Deanda v. Becerra*, 96 F.4th 750, 767-68 (5th Cir. 2024) ("We know of no authority . . . authorizing a court to vacate a regulation under § 706(2) in the absence of an APA claim."). Here, Plaintiff's two-count Amended Complaint—the operative complaint and focus of the May 18, 2026, trial—lacks an APA claim. *See generally* ECF 115. APA § 706(2), therefore, does not empower the Court to vacate CBP's border search directive.

Nor do the Court's inherent equitable powers empower the Court to fashion such relief. Plaintiff argues vacating CBP's border search directive is necessary to afford Plaintiff "complete relief." ECF 189 at 9-10 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 709 (1979)). While vacating the directive may be necessary to grant Plaintiff complete relief *if* the Court found the CBP directive was unconstitutional, *but see Trump v. CASA, Inc.*, 606 U.S. 831 (2025), the Court has made no such findings. This case has narrowed significantly since its inception. At trial, the Court determined only whether Defendants' asserted justifications for conducting an advanced border search of Plaintiff's devices constituted reasonable suspicion such that the advanced searches complied with the Fourth Amendment.[2] The Court did not decide, nor did the parties present evidence relevant to, whether CBP Directive 3340-049A violated the Fourth Amendment. Indeed, the Court's post-trial Memorandum Opinion and Order explicitly disclaimed passing judgment on the constitutionality of the CBP Directive. *See* ECF 186 at 14 n.9. Because the Court did not address the constitutionality of the CBP Directive, providing Plaintiff complete relief for the constitutional violation found does not require vacating the CBP Directive. As such, the Court denies Plaintiff's request to vacate the CBP Directive.

### B. Enjoin Defendants From Conducting Advanced Searches Based On The Same Justifications As The June And August 2024 Searches

Plaintiff next asks the Court to enjoin Defendants from conducting advanced searches on Plaintiff's devices "for the reasons listed in Defendants' TECS Reports—including those reasons which are redacted." ECF 189 at 12. The scope of Plaintiff's requested injunction far exceeds the scope of the constitutional violation the Court found. The Court determined only that the facts Defendants relied on at trial to justify the advanced searches of Plaintiff's devices did not rise to

[2] The Court also addressed Plaintiff's First Amendment retaliation claim, but because the Court granted judgment to Defendants on that claim, it is not relevant to the present discussion of remedies.

the level of reasonable suspicion. Defendants could have pointed to other reasons, including redacted reasons, to justify the advanced searches, but it chose not to do so. As such, the Court necessarily did not determine whether any of *those* reasons, alone or in combination, constituted reasonable suspicion. The Court will not enjoin Defendants from relying on facts the Court has not deemed insufficient to establish reasonable suspicion. *See Ostergren*, 615 F.3d 288-89 ("*Once a constitutional violation is found*, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." (emphasis added)).

Plaintiff also asks the Court enjoin Defendants from conducting advanced border searches of Plaintiff's devices based on the combination of reasons the Court, in fact, found constitutionally infirm. *See* ECF 189 at 20 ("[T]he Government should be, at minimum, enjoined from performing a forensic search based on the reasons identified in the Court's memorandum opinion."). "A plaintiff seeking injunctive relief must demonstrate that there is a non-speculative, imminent threat of repeated future injury to establish injury in fact sufficient to support injunctive relief." *Carroll v. 1st Advantage Federal Credit Union*, 2018 WL 2933411, at *2 (E.D. Va. Apr. 9, 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). The Supreme Court requires Plaintiff demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. Defendants argue that because Plaintiff has recently returned from international travel without CBP conducting advanced border searches of his devices, "the chance of future injury is speculative." ECF 192 at 6. The Court disagrees. Plaintiff has been stopped by CBP and been subjected to advanced border searches on numerous occasions. ECF 186 at 2, 9. There is no reason to believe Plaintiff will abruptly stop traveling internationally. And it is reasonable to assume he will again be subject to advanced border searches upon his return.

But to have standing for a forward-looking injunction, Plaintiff must do more than show that he will be subject to advanced border searches in the future; he must demonstrate an "immediate threat" that Defendants will again conduct those searches without reasonable suspicion. While the Court can reasonably assume Plaintiff will be subject to advanced border searches, it cannot reasonably predict the justifications for conducting future advanced searches or presume they will be conducted in violation of the Fourth Amendment. Because Plaintiff faces only a speculative threat of his Fourth Amendment rights being violated during a future advanced border search, Plaintiff is not entitled to a forward-looking injunction.

### C. Expungement Of Information Obtained Through The Unconstitutional Searches

Finally, Plaintiff asks the Court to order "the Government" to "destroy all information unlawfully obtained from Dr. Abu Irshaid's devices and ensure that any third party to which it disseminated that information does the same." ECF 189 at 18. "[E]xpungement is an extraordinary measure committed to the discretion of the Court." *Alasaad v. Nielsen*, 419 F. Supp. 3d 142, 171 (D. Mass. 2019), *aff'd in relevant part, vacated in part, rev'd in part*, 988 F.3d 8, 23 (1st Cir. 2021). Defendants offer a narrower alternative: "that Defendants provide an appropriate notification, such as a notation or correction within their systems that the information was obtained in violation of the Fourth Amendment and thus should not be relied upon." ECF 192 at 11.

The Court will adopt Defendant's suggestion. Having found a constitutional violation, this Court "is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Ostergren*, 615 F.3d at 288-89. "Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends." *S.C. Dep't of Wildlife & Marine Res. v. Marsh*, 866 F.2d 97, 100 (4th Cir. 1989). Requiring Defendants to notate all information obtained through the unconstitutional advanced

border searches of Plaintiff's devices and state that such information should not be relied upon going forward will address Plaintiff's concern about further use of the information.

Plaintiff has repeatedly analogized this case to a "motion to suppress" in the criminal context, *see, e.g.*, Trial Tr. 6:5-6, so it is appropriate that the relief granted here aligns with the exclusionary rule, the traditional remedy in the criminal context following an unconstitutional search, *see generally Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357 (1998) (discussing the exclusionary rule). As "a judicially created means of deterring illegal searches and seizures," the exclusionary rule "does not 'proscribe the introduction of illegally seized evidence in all proceedings or against all persons.'" *Id.* at 362-63. Instead, it "applies only in contexts 'where its remedial objectives are thought most efficaciously served.'" *Id.* at 362-63. In other words, it is "applicable only where its deterrence benefits outweigh its 'substantial social costs.'" *Id.* at 363. Although requiring the destruction of all information obtained through the unlawful advanced border searches of Plaintiff's devices would certainly deter Defendants from committing similar violations in the future, that deterrence would come at great cost. That same deterrence, however, can be achieved through the notation system Defendants propose while avoiding the steep social cost associated with destruction. Because the notation remedy Defendants propose will efficaciously satisfy the exclusionary rule's remedial objectives, the Court will grant such relief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remedies (ECF 189) is **DENIED** in part and **GRANTED** in part. It is further

**ORDERED** that Defendants must provide an appropriate notation or correction in their systems that the information obtained through the June 3, 2024, and August 8, 2024, advanced

border searches of Plaintiff's devices were obtained in violation of the Fourth Amendment and should not be relied upon going forward. It is further

**ORDERED** that Plaintiff shall file any motion for attorneys' fees pursuant to 28 U.S.C. § 2412 within 21 days of entry of this order. Defendants shall file any opposition to Plaintiff's motion with 14 days. Plaintiff may file any reply within seven days of Defendants' opposition.

**IT IS SO ORDERED.**

The Clerk is directed to enter judgment in Plaintiff's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

September 14, 2026
Alexandria, Virginia